IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINA STEELE,<br><br>        Plaintiff,<br><br>v.<br><br>GREAT BASIN SCIENTIFIC, INC.<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 2:16-cv-00628-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is a motion brought by defendant Great Basin Scientific, Inc. to dismiss the single cause of action asserted against it by plaintiff Christina Steele. (Docket 6). The court GRANTS the motion and dismisses the complaint with prejudice.

## BACKGROUND

Great Basin manufactures diagnostic testing kits used to detect the presence of blood pathogens. Strict anti-contamination protocols are required to manufacture accurate testing kits. If a kit is contaminated during the manufacturing process, it will produce a false-positive test result. Great Basin sells the testing kits to hospitals nationwide. Hospitals then bill patients for the kits when they are used. For at least some of the kits, hospitals request payment from the Federal Government through Medicare and Medicaid.

Ms. Steele worked for Great Basin as its director of recruitment and company culture. On multiple occasions, Ms. Steele raised concerns about the potential for testing kit contamination caused by employees moving from "dirty" areas of the facility to "clean" areas where the kits are produced. Some of the concerns she voiced to her superiors included inadequate signage on the entry to the clean portion of the facility; inadequate door locks and security card panels; the

absence of color coded employee identification badges to differentiate employees in the clean facility from employees in the dirty facility; inadequate ventilation, which caused employees to leave doors between clean areas and dirty areas open; the absence of security cameras to enforce anti-contamination protocols; and the lack of comprehensive anti-contamination training.

Ms. Steele periodically made suggestions for improvement in these areas over the course of approximately eight months. Great Basin fired her soon after she made one of her proposals for improvement.

Ms. Steele sued Great Basin, alleging in her sole cause of action that she had been wrongfully terminated in retaliation for her efforts to stop her employer from violating the False Claims Act (the "FCA" or the "Act") and because Great Basin believed that she was preparing to file a lawsuit under the Act. Great Basin moved for the dismissal of her suit, arguing that Ms. Steele has not alleged any facts showing that it had notice that she had engaged in any activities protected by the Act.[1]

## LEGAL STANDARD

Under rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

---

[1] Great Basin also argued that Ms. Steele failed to allege a causal connection between any protected activity and her termination. The court does not address this argument because it dismisses the complaint with prejudice on the grounds of lack of notice.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted)). However, a court will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Thus, a claim must be dismissed where the complaint does not contain sufficient facts to make the claim "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Enacted during the Civil War to curb fraud against the government, *see Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016), the False Claims Act imposes penalties against "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1). The Act permits individuals to sue on behalf of the government to enforce the statute. *Id.* § 3730(b).

The Act also contains an anti-retaliation provision that states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.*

*Id*. § 3730(h)(1) (emphasis added). Thus, an employee who has suffered an adverse employment action may successfully sue an employer (1) if the adverse action is in retaliation for "lawful acts . . . in furtherance of" a *qui tam* or Government action under the False Claims Act or (2) if the adverse action is in retaliation for "other efforts to stop 1 or more violations of" the Act. *Id.*

In order to determine if Ms. Steele has pled a viable retaliation claim under the False Claims Act, the court will examine each of these two theories of liability in turn.

I.     **Acts in Furtherance of a Legal Action**

A plaintiff alleging retaliation for acts in furtherance of a legal action "has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government." *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012) (citation omitted). Notice may be provided by "informing the employer of 'illegal activities' that would constitute fraud on the United States; by warning the employer of regulatory noncompliance and false reporting of information to a government agency; or by explicitly informing the employer of an FCA violation." *Id.* (citations omitted). "But merely informing the employer of regulatory violations, without more, does not provide sufficient notice, because doing so gives the employer 'no suggestion that [the plaintiff is] going to report such noncompliance to government officials' or bring 'her own qui tam action.'" *Id.* (alteration in original) (citation omitted). "Whistleblowers 'must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations.'" *Id.* (citation omitted).

In this case, Ms. Steele produced evidence that that she complained about several deficiencies in Great Basin's policies and procedures for preventing contamination of the testing

4

kits and recommended to her superiors that various actions be taken to reduce the chances of contamination. But Ms. Steele does not allege any facts suggesting that Great Basin was on notice that she was either preparing to file a *qui tam* lawsuit against her employer or cooperating with the Government in preparing a lawsuit.

The Tenth Circuit has consistently held that absent specific allegations of notice of a potential lawsuit, a plaintiff's complaints to superiors are insufficient to sustain a retaliation claim. In *McBride*, for example, an employer knew that an employee was going to tell outside auditors "how terrible" the employer was and that the employee was examining the employer's policies to see where it was out of compliance with government regulations. 688 F.3d at 704. This knowledge, however, did not support an inference that the employer knew that the employee was planning to sue. *Id.* Similarly, in *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 729 (10th Cir. 2006) and *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522–23 (10th Cir. 1996), the Tenth Circuit held that complaints to superiors or to an internal fraud department regarding the employer's lack of compliance with Medicare and Medicaid billing requirements were inadequate to prove that the employer had notice of an impending lawsuit brought under the False Claims Act.

Ms. Steele argues that her retaliation claim is distinguishable from *McBride*, *Sikkenga*, and *Ramseyer* because in those cases the complaining employee's job duties included insuring that the employer complied with government regulations and standards. She asserts that because her job title was director of recruitment and company culture, this court should infer that her employment duties did not include the improvement of Great Basin's anti-contamination policies. Ms. Steele further contends that since she was acting outside the scope of her job

5

description when she made her recommendations, Great Basin was on notice of an impending lawsuit under the FCA.

Ms. Steele's attempt to differentiate her case from Tenth Circuit precedent is misplaced. First, Ms. Steele did not allege in her complaint that her job had nothing to do with regulating employee access to clean areas of the facility. And although the complaint must be viewed in the light most favorable to her claims, her job title alone is too thin a reed to support such an inference.

Second, her retaliation claim would fail as a matter of law even if Ms. Steele had alleged that she was acting outside the scope of her specific job duties when she made her suggestions. The strongest support for Ms. Steele's argument can be found in *Sikkenga*, which states that "where employees' regular duties include investigation of fraud, such persons must clearly plead notice to their employers of their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations." 472 F.3d at 729. Although *Sikkenga* stands for the proposition that an employee reporting fraud to superiors as part of regular job duties is insufficient by itself to alert an employer of an impending lawsuit, that opinion does not support the proposition that an employee acting outside of her regular job duties by suggesting improvements to the process of manufacturing a product is sufficient to put the employer on notice that the employee plans to sue it for defrauding the Government.

In other respects, moreover, Ms. Steele's claim that her employer was on notice of a possible lawsuit is more tenuous than the inadequately supported claims made by the plaintiffs in *McBride*, *Sikkenga*, and *Ramseyer*. In all three of those cases, the employer was directly involved in making claims for payment from the federal government. But in this case, Great Basin did not

submit any request for payment to the Government. Nor is there any indication that it made any misrepresentations to the Government in connection to a request for payment. Instead, it sold testing kits to hospitals, which in turn requested payment from federal agencies. Although it may be theoretically possible to bring a viable FCA claim against Great Basin under a conspiracy theory, it would be less than apparent that Great Basin could be liable for making a false claim for payment from the Government simply by allegedly injecting substandard products into the stream of commerce with the knowledge that some of those products would eventually be purchased by the Government. Thus, the inference that Ms. Steele's suggestions for improvement were a prelude to a lawsuit under the False Claims Act is even more attenuated than such an inference was in *McBride*, *Sikkenga*, and *Ramseyer*.

In sum, an employee's suggestions to improve the quality of the employer's product, whether pursuant to a specific job duty or not, do not notify the employer of the employee's plans to sue the employer at a future date. Ms. Steele never intimated that she intended to somehow use Great Basin's anti-contamination policies as a basis for a lawsuit. *See Ramseyer*, 90 F.3d at 1523 ("[P]laintiff never suggested to defendants that she intended to utilize such noncompliance [with Medicaid requirements] in furtherance of an FCA action."). Therefore, her suggestions, without more, did not "make clear [her] intentions of bringing or assisting in an FCA action." *McBride*, 688 F.3d at 704 (citation omitted).

## II.     Efforts to Stop Violations of the FCA

Ms. Steele also argues that she has properly pled a retaliation claim because the facts asserted in her complaint can lead to the conclusion that Great Basin fired her because of her "efforts to stop 1 or more violations of" the FCA. *See* 31 U.S.C. § 3730(h)(1). In order to evaluate this argument, the court must first determine the proper standard for evaluating when an

employer is on notice of an employee's efforts to stop violations of the Act. In particular, the court must examine whether a 2009 amendment to the False Claims Act modified the standard for determining notice. Second, the court must decide whether the facts pled in the complaint meet the appropriate notice standard.

Prior to 2009, the anti-retaliation provision of the False Claims Act provided remedies for employees that had been subjected to an adverse employment action "because of *lawful acts* done by the employee on behalf of the employee or others *in furtherance of an action under this section*, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h) (2008) (emphasis added). In 2009, this provision was amended to provide remedies for employees subjected to an adverse employment action "because of *lawful acts* done by the employee, contractor, agent or associated others *in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter*." 31 U.S.C. § 3730(h)(1) (2016) (emphasis added); *see* Pub.L. No. 111–21, § 4(d), 131 Stat. 1617 (2009); Pub.L. No. 111–203, § 1079A(c)(1), 124 Stat. 1376 (2010). Thus, the pre-2009 version of the statute protected workers when they engage in "lawful acts . . . in furtherance of an action" under the FCA, while the current version of the statute protects workers when they engage in "lawful acts . . . in furtherance of an action . . . *or* other efforts to stop 1 or more violations" of the Act.

Ms. Steele argues that this court should disregard the standard for determining when an employer is on notice that an employee is engaged in protected activity articulated in *McBride*, *Sikkenga*, and *Ramseyer* because the 2009 amendment effectively overruled the notice standard found in those cases. The court disagrees. The amendment undoubtedly expanded the sweep of the Act's protections against retaliation. Post-amendment, the FCA protects employees from

retaliation for efforts to halt violations of the Act as well as for actions taken in furtherance of a lawsuit. But the 2009 amendment did not fundamentally alter the standard laid out in *McBride* and other cases for determining when an employer is on notice that an employee has engaged in one of these protected activities.[2]

It is true that *McBride* and its precedents only addressed the question of whether the employer was on notice of a potential lawsuit. Those opinions did not speak to the question of whether the employer had notice of the employee's efforts to stop a fraud on the Government. *See McBride*, 688 F.3d at 704; *Sikkenga*, 472 F.3d at 729; *Ramseyer*, 90 F.3d at 1522–23. But at least as applied to the facts of this case, the rationale of *McBride*, *Sikkenga*, and *Ramseyer* is relevant to the question of whether Great Basin was on notice of any efforts on the part of Ms. Steele to stop a violation of the FCA.

As noted above, these Tenth Circuit opinions held that a plaintiff must allege specific facts that show the employer knew that the employee had engaged in a protected activity and that the employee was subjected to an adverse employment action because the protected activity. But in this case, Ms. Steele's suggestions aimed at improving anti-contamination protocols did not notify Great Basin that she was attempting to stop a violation of the FCA. There is no indication that her suggestions were aimed at curbing a fraud on the Government rather than at improving the quality and consistency of Great Basin's product. And there was no reason for Great Basin to

---

[2] Great Basin argues that because the Tenth Circuit issued the *McBride* opinion in 2012, about three years after the 2009 amendment, the court of appeals has implicitly rejected the notion that the amendment has changed the notice standard. But *McBride* never mentioned the 2009 amendment, nor did it analyze or apply the new "efforts to stop 1 or more violations" language. And this court's review of the appellate briefing in the *McBride* case reveals that the parties did not raise the issue. The *McBride* opinion cannot be authority for a principle of law that the court did not mention or consider.

believe that Ms. Steele was doing anything other than attempting to serve her employer by making these suggestions. *See Sikkenga*, 472 F.3d at 729.

Moreover, in order to show that Ms. Steele was fired for efforts to stop violations of the FCA, she must plead facts that show that there was a fraud on the Government to be stopped. But Ms. Steele has not adequately pled that Great Basin was violating the Act. Broadly speaking, liability under the FCA requires a knowing lie to the Government in order to receive a payment that it would not have otherwise remitted. The Act's "focus remains on those who present or directly induce the submission of false or fraudulent claims." *Universal Health Servs.*, 136 S. Ct. at 1996. Great Basin, however, did not submit or directly induce claims for payment from the Government. Nor are there allegations that it make any fraudulent representations to the Government in connect with such a claim. Manufacturing a substandard product and placing it in the stream of commerce with the knowledge that the Government may purchase it from a third party does not violate the Act. Therefore, Great Basin had no reason to believe that Ms. Steele's suggestions aimed at improving the quality of its products were attempts to stop a violation of the Act.

## CONCLUSION

Ms. Steele has not pled facts that could support a conclusion that Great Basin had notice that she was either taking steps to bring a lawsuit or to stop a violation of the False Claims Act. Absent notice on the part of Great Basin of one of these protected activities, Great Basin cannot make out a retaliation claim under the Act. At the hearing on this motion, counsel for Ms. Steele represented that she has pled all of the relevant facts and that permitting her leave to file an amended complaint would be futile. The court, therefore, GRANTS Great Basin's motion to dismiss Ms. Steele's complaint. (Docket 6). Dismissal is with prejudice.

Signed November 21, 2016.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge
